**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAY 12 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 97-2112

MARCOS AMABILES PENA,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-96-470-SC)**

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Renee L. Camacho, Assistant U.S. Attorney, Las Cruces, New Mexico, (John J. Kelly, U.S. Attorney, and Charles L. Barth, Assistant U.S. Attorney, Albuquerque, New Mexico, on the brief), for Plaintiff-Appellee.

Before PORFILIO, HOLLOWAY, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Defendant Marcos Pena was convicted of possession with intent to

distribute five grams or more of cocaine base in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2(a). Prior to trial, Pena filed a motion to suppress evidence, but the district court denied the motion. He appeals that denial, asserting that he did not consent to the search during which the police found the drugs that he was convicted of possessing, and that even if he did give his consent, the officers' search exceeded the scope of his consent. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    Facts

On March 8, 1996, Albuquerque Police Department Officer Stephen Devoti was dispatched to the Friendship Inn to investigate a report from an anonymous caller that two Cubans were dealing drugs out of Room 312. Officer Devoti learned at the front desk of the motel that the room was registered under the defendant's name. For the next two hours, Devoti observed the room from a park across the street from the motel. Then, Officer Devoti, accompanied by three other officers, went to the door of the room, knocked, and identified himself in Spanish as a police officer. The defendant opened the door. Officer Devoti asked Pena whether he spoke English, and Pena said that he did, though Pena later testified that he does not understand much English. Devoti testified that he believed Pena understood what Devoti said in English without difficulty. In English, Devoti told Pena that the police had received complaints about the room, that there was too much foot traffic to and from the room, and that he could smell

marijuana. According to Devoti, Pena stated that he and a friend, Luis Gonzalez, had smoked marijuana but that it was all gone. At the suppression hearing, Pena denied that this conversation occurred.

Devoti testified that he then asked Pena, "You wouldn't mind if I looked then, if I had a look in the room?" On cross-examination, Devoti was unable to recall the exact form of the permission Pena gave, but he testified that Pena said "something to the effect, 'Yeah, go ahead.'" Pena testified to the contrary. He said that he gave the officers permission to enter the motel room but never gave them permission to search the room.

Devoti then told Pena to sit down on the bed with Gonzalez, who was still in the room with Pena. While Devoti watched Pena and Gonzalez, fellow officers Michael Sullivan and Lawrence Horan entered the bathroom. They saw two marijuana cigarettes floating in the toilet. The officers then placed Pena and Gonzalez under arrest. Officer Sullivan went back into the bathroom and removed a ceiling tile in the bathroom above the toilet and found a bag of marijuana. Officer Horan inserted his head into the hole where the ceiling tile had been and found two bags of crack cocaine. After he discovered the crack cocaine, Officer Horan transported Pena and Gonzalez to jail.

## II.  Discussion

On appeal, the defendant first asserts that he did not freely and voluntarily

consent to the search of his motel room.  Second, he argues that even if he did consent to the search, the officers exceeded the scope of that consent by searching the bathroom and above the ceiling in the bathroom.  When reviewing a district court's grant or denial of a motion to suppress, we accept the court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government.  See United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997).

A.     Consent to Search

The officers did not have a warrant to search the motel room.  While a police search conducted without a warrant would constitute a violation of the Fourth Amendment in other circumstances, it is well settled that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  Thus, the pivotal issue here is whether Pena gave the officers consent to search the motel room, including the bathroom.  Valid consent is that which is "'freely and voluntarily given.'"  Id. at 222 (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  Whether a defendant freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances.  United States v. Santurio, 29 F.3d 550, 552 (10th Cir. 1994) (citing United States v. Mendenhall, 446 U.S. 544,

557 (1980)).

The district court found "that consent was given, that the Defendant did understand the request by Officer Devoti to look around, to examine, to check the room . . . ." Tr. Vol. III at 128-29. The defendant asserts that this finding was clearly erroneous and that he did not freely and voluntarily give his consent because, among other reasons, (1) his alleged response to the search request, "go ahead," was not unequivocal and specific; (2) the defendant's lack of understanding of English inhibited him from intelligently giving his consent; (3) the police failed to inform him that he could have refused or withdrawn his consent; and (4) the defendant was confronted with four armed officers when Officer Devoti asked him for his consent to search.

The government has the burden of proving valid consent to a warrantless search. United States v. Cody, 7 F.3d 1523, 1526 (10th Cir.1993). First, it must present "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." United States v. Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir.1995) (citations and internal quotation marks omitted). Second, the government must show that the police did not coerce the defendant into granting his consent. See id.

Under the first step of this two-part test, the government presented clear and positive testimony that Pena gave his specific and unequivocal consent to

search the motel room, and that he did so freely and intelligently. In response to Officer Devoti's question, "You wouldn't mind if I looked then, if I had a look in the room," Pena responded with words to the effect of "go ahead." At the suppression hearing, the defendant denied ever giving this response. On appeal, he renews that assertion and also argues that the government did not meet the first step of the two-part test because his response of "go ahead," if actually said, was not unequivocal and specific and because his lack of understanding of English inhibited him from intelligently giving his consent.

The district court simply did not believe Pena's contention that he did not acquiesce when the officers requested to search the room. "Evaluation of the credibility of witnesses, the weight to be given the evidence, and inferences to be drawn from the evidence are for the district court." United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). Thus, we defer to the district court's evaluation of the defendant's credibility on this matter.[1]

_____

[1] The district court's credibility determination on this issue is bolstered by the court's finding that the defendant was less than candid in regard to at least one other subject. There is evidence in the record that the defendant was not truthful in responding to questions regarding a conversation between him and Officer Horan about his gold watch. According to Horan's testimony, en route to the jail Horan asked Pena the cost of the watch he was wearing. When asked about this conversation at the suppression hearing, Pena said, "I don't remember a watch. I don't use a watch, I don't use a watch." The district court then requested a copy of Pena's inventory list from the jail to determine if he was wearing a watch when he was arrested. A copy of the inventory was introduced. It indicated that Pena was wearing a watch when he was booked into jail. The court noted that "what that exhibit reveals to me is that the Defendant has been less than forthcoming

In addition, contrary to Pena's argument that his alleged response of "go ahead" was not unequivocal and specific, we find that the district court properly concluded that the statement was an unequivocal and specific consent. The statement was in direct response to Officer Devoti's request to search the room. Further, Pena's assertion that his lack of understanding of English kept him from intelligently consenting to the search is without merit. The record demonstrates that Pena spoke and understood more than enough English to know what Devoti asked him. Devoti testified that Pena, although he had a strong accent, had no trouble conversing with him in English. Officer Horan testified that he had a conversation in English with Pena while en route to book him into jail. Pena asked Horan in English whether money seized from him would be returned. Horan and Pena also discussed the gold watch Pena was wearing. At one point during the government's cross-examination of Pena at the suppression hearing, the court noted that Pena answered a question that had been asked in English before it was translated for him.

There was extensive testimony to serve as a basis for the district court's finding that the defendant freely and intelligently gave his specific and unequivocal consent to the search. Pena's arguments do not undermine the court's finding. The district court did not believe the defendant's assertion that

in connection with the testimony concerning the watch . . . ." Tr. Vol. III at 117.

he did not consent to the search, nor did the district court believe Pena's contention that he does not speak English or that his statement of "go ahead" was not a clear response to Officer Devoti's specific request to search. We cannot say that the district court clearly erred in finding that Pena freely and intelligently gave specific and unequivocal consent to search his motel room.

Turning to the second part of the two-step test, we hold that the government proved the police did not coerce the defendant into granting his consent to search. In determining whether a consent to search was free from coercion,

> a court should consider, inter alia, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances. An officer's request for consent to search does not taint an otherwise consensual encounter "as long as the police do not convey a message that compliance with their request is required."

United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994) (quoting United States v. Griffin, 7 F.3d 1512, 1517 (10th Cir. 1993)). Pena does not assert that the police resorted to any of these tactics. Rather, he contends that the police coerced him to consent because they failed to inform him that he could have refused or withdrawn his consent and because he was confronted with four armed officers when Devoti asked for his consent.

Both of these factors are relevant in determining whether a detainee's consent to search was free from coercion. See United States v.

Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993) (declaring that failure to advise defendant of his right to refuse consent to search is only one factor in determining whether consent was voluntary); United States v. Davis, 40 F.3d 1069, 1078 (10th Cir. 1994) (recognizing that presence of several officers in "home might be intimidating to the point of negating the voluntariness of consent in some situations"). Nevertheless, we find that the district court did not clearly err in determining that the police did not coerce the defendant into granting his consent. Although Officer Devoti came to Pena's motel room with three other armed officers, none of the officers unholstered his firearm. The officers all remained outside the motel room until Pena gave them permission to enter. Pena does not assert, and the record does not support a conclusion, that the police officers conducted themselves in an unprofessional manner. We affirm the district court's determination that the defendant consented to the search of his motel room.

B.    Scope of Consent

The defendant argues that even if he did consent to the search, the police exceeded the scope of that consent by searching the bathroom of the motel room. The standard for measuring the scope of an individual's consent to search is that of "objective reasonableness," asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances.

Florida v. Jimeno, 500 U.S. 248, 251 (1991). The scope of a consent to search "is generally defined by its expressed object, and is limited by the breadth of the consent given." United States v. Elliott, 107 F.3d 810, 814-15 (10th Cir.1997) (citations and internal quotation marks omitted). We view the evidence in the light most favorable to the government and must uphold a district court's finding that a search is within the boundaries of the consent unless it is clearly erroneous. Id. In this case, the district court found that Pena's consent to look into the motel room included the officer's search of the bathroom. The court stated:

> [L]ooking into the bathroom and into that toilet bowl where the marijuana cigarettes were found[] was . . . implied when the officer was permitted to examine, quote, the room. We are talking about a motel room, we are talking about the accommodation there and the bathroom is part of the accommodations.

Tr. Vol. III at 129. We agree with the district court. A reasonable person would think that when he gives consent to search a motel room, his consent includes the small bathroom attached to the main room.

We further conclude that the district court did not clearly err in finding that the defendant's "go ahead" response to Officer Devoti's request to "look in" the motel room reasonably included a search into the area above the bathroom ceiling. Three factors persuade us in reaching this latter conclusion. First, at no point did Pena object to the officers' search of the bathroom. He was not under arrest when Officers McDonald and Cannon went to the bathroom to conduct their search,

though he was in the room. His failure to object to the officers' entrance into and search of the bathroom "may be considered an indication that the search was within the scope of the consent." United States v. Espinoza, 782 F.2d 888, 892 (10th Cir. 1986).

Second, we have consistently held that similarly phrased requests for consent to search are requests for a full search of the premises. See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997) (holding that by giving officer consent to "scout around" his vehicle, defendant authorized full search of it, including underneath and around it); United States v. McRae, 81 F.3d 1528, 1537-38 (10th Cir. 1996) (concluding that defendant's consent to officer's request to "look in" his car gave officer authorization to search the car, including lifting up carpeting in the trunk of the car); United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986) (concluding that defendant's consent to officer's request to "look through" defendant's automobile authorized officer to conduct thorough search of vehicle).

Third, because Officer Devoti asked for Pena's consent immediately after Pena had admitted to smoking marijuana in the motel room, it was clear to Pena that the object of the search was to find illegal narcotics. One in possession of illegal drugs does not typically leave them out in the open. Consent to an officer's request to search for drugs would reasonably include areas in which one

would be expected to hide drugs. Because Pena consented to a search for drugs, he consented to a search of any area in the motel room where one might hide drugs. See United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994) (holding that because defendant consented to search of apartment for another person, he consented to search of any area large enough to accommodate that individual). Officer Horan testified at the suppression hearing that police typically search above the ceiling tiles in hotel rooms because that is a common hiding place for illicit drugs. Thus, Officer Devoti's request to "look in" the motel room, in these circumstances, would reasonably be understood to include a thorough search of the room, including the space above the bathroom ceiling.

## III.    Conclusion

We conclude that the district court did not clearly err in determining that the defendant consented to the search of his motel room. We also conclude that the district court did not clearly err in finding that the defendant's consent extended to the motel room's bathroom, including the space above the bathroom ceiling. Accordingly, we AFFIRM the district court's denial of the defendant's motion to suppress.