F I L E D
**United States Court of Appeals
Tenth Circuit**

**DEC 14 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

$72,522.00 IN US CURRENCY,

Defendant.

------------------------

ROGER WAYNE PATTERSON,

Claimant - Appellant.

No. 97-6392
(D. Ct. No. CIV-96-1472-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BRISCOE**, and **MURPHY**, Circuit Judges.

Claimant-Appellant Roger Wayne Patterson appeals the district court

judgment in favor of the United States in this civil forfeiture action brought under

21 U.S.C. § 881(a)(6). On appeal, Mr. Patterson asserts that the district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

erred in denying his motion to suppress evidence discovered in violation of the Fourth Amendment during a law enforcement search of the vehicle he was driving because: (1) the officer illegally detained him when the search request was made and (2) his consent to the search was invalid. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

On December 5, 1995, Oklahoma Highway Patrol Trooper Paul D. Hill pulled over Mr. Patterson for following another vehicle too closely on Interstate 35 in Oklahoma City. Prior to stopping Mr. Patterson, Trooper Hill conducted a check on the licence plate of the van Mr. Patterson was driving and discovered that the tag was registered to another vehicle, a 1983 Honda. After pulling over Mr. Patterson, Trooper Hill approached the van and asked Mr. Patterson for his driver's license. Mr. Patterson passed over his license twice in his wallet while looking for it, suggesting to Trooper Hill an unusual amount of nervousness. The driver's license Mr. Patterson eventually provided had expired, but Trooper Hill later determined that Mr. Patterson had a valid license issued to him. When Trooper Hill asked for the van's registration, Mr. Patterson explained that he was not the owner of the vehicle and that the van belonged to a friend named Tina, but he could not provide her last name. Mr. Patterson then provided a copy of the van's registration, which Trooper Hill later used to determine that the van belonged to an individual named Tina Kaiser. While Trooper Hill was requesting

the vehicle registration, he noticed that the passenger in the van began nervously handling a cellophane-wrapped rose that had been lying on the dashboard. Trooper Hill testified that it was unusual for a passenger to exhibit nervousness during a routine traffic stop.

Trooper Hill subsequently asked Mr. Patterson to accompany him to his patrol unit and advised Mr. Patterson that he would issue a warning ticket. When Mr. Patterson entered the patrol car, Trooper Hill detected the odor of incense on him. Trooper Hill testified that drug traffickers commonly use incense to mask the odor of narcotics. After issuing the warning ticket and returning Mr. Patterson's documents, Trooper Hill inquired whether Mr. Patterson would answer an additional question. Mr. Patterson responded in the affirmative. Trooper Hill asked if he was transporting any illegal narcotics, alcohol, tobacco, or firearms. When Mr. Patterson responded that he had no such items in the van, Trooper Hill requested permission to search the van. Mr. Patterson reiterated his assertion that he had no illegal items in the vehicle, and Trooper Hill repeated his request to search the van. Mr. Patterson ultimately responded, "Well, I guess so." At no time before or during questioning did Trooper Hill draw or place his hand on his weapon, raise his voice, or threaten Mr. Patterson. Trooper Hill searched the van with his narcotics-detecting dog and discovered containers that held small amounts of cocaine, cocaine residue, and methamphetamine, as well as

$72,522.00 in currency.

On August 28, 1996, the United States brought a civil forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(6) on the grounds that the cash was used or intended to be used in exchange for controlled substances or represents the proceeds of trafficking in controlled substances. On November 6, 1997, the district court held a bench trial. At the end of the trial, Mr. Patterson's counsel moved to suppress the evidence discovered during the search of the van, arguing that it was the fruit of an unconstitutional search. The district court denied the motion to suppress and entered judgment for the United States. This appeal followed.

### Standard of Review

When reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government. See United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. See id.

### I.

The Fourth Amendment protects individuals from unreasonable searches and seizures. See U.S. Const. amend. IV. Under the exclusionary rule, evidence

obtained in violation of the Fourth Amendment is inadmissable at trial. See, e.g., United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir. 1994). We must initially address Mr. Patterson's claim that his detention by Trooper Hill was an unconstitutional seizure, for such a violation may make an otherwise constitutional search invalid under the Fourth Amendment if the search resulted from the illegal seizure. See, e.g., United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994); United States v. Fernandez, 18 F.3d 874, 881-82 (10th Cir. 1994).

While a consensual police-citizen encounter does not implicate the Fourth Amendment, see United States v. Torres-Guevara, 147 F.3d 1261, 1264 (10th Cir. 1998), a routine traffic stop is considered a seizure within the meaning of the Fourth Amendment, see Hunnicutt, 135 F.3d at 1348. The principles set forth in Terry v. Ohio, 392 U.S. 1 (1968), govern whether a traffic stop is reasonable under the Fourth Amendment. Under Terry, a traffic stop must be "justified at its inception and the detention must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997) (quoting Terry, 392 U.S. at 20). Mr. Patterson does not dispute that the traffic stop was justified at its inception. Rather, he argues that Trooper Hill's questioning of him after he had received his warning ticket violated the second portion of the Terry inquiry.

Specifically, he asserts that Trooper Hill violated his Fourth Amendment rights because Hill's questioning detained him and was unrelated to the reason for the stop.

A traffic stop must generally "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). However, an officer may detain a driver for further questioning unrelated to the initial traffic stop when the officer develops a reasonable and articulable suspicion that the driver has or is engaging in illegal activity or if the initial detention has become a consensual encounter. See Hunnicutt, 135 F.3d at 1349. Both of these circumstances existed at the time of Trooper Hill's questioning.

First, based upon our review of the record, we conclude that Trooper Hill had a reasonable and articulable suspicion to detain Mr. Patterson for further questioning. The record reveals that: (1) Mr. Patterson passed over his driver's license twice when Trooper Hill requested it; (2) Mr. Patterson could not provide the last name of the person who lent him the van; (3) the passenger in the van exhibited an unusual amount of nervousness while Trooper Hill interacted with Mr. Patterson; and (4) Mr. Patterson smelled of incense. Although the odor of a masking agent alone is insufficient to establish reasonable suspicion, when combined with additional indicia of illegal activity, such as here, it is sufficient to "'support[] a reasonabl[y] brief inquiry.'" United States v. Villa-Chaparro, 115

F.3d 797, 802 (10th Cir. 1997) (quoting United States v. Alvarez, 68 F.3d 1242, 1245-46 (10th Cir. 1995) (McKay, J., concurring)), cert. denied, 118 S. Ct. 326 (1997). Trooper Hill only briefly questioned Mr. Patterson and, thus, did not violate his Fourth Amendment rights.

Second, Mr. Patterson's detention for further questioning was consensual. This court has held that "after an officer issues the citation and returns any materials provided, the driver is illegally detained only if the driver has objectively reasonable cause to believe that he or she is not free to leave." United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996). Thus, a driver might establish an illegal detention when there is a "'coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.'" Anderson, 114 F.3d at 1064 (quoting United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991)). The record indicates that Trooper Hill issued Mr. Patterson's warning ticket and returned his documentation prior to questioning him regarding the transportation of illegal items and making the search request. In addition, at no time before or during questioning did Trooper Hill draw or place his hand on his weapon, raise his voice, threaten Mr. Patterson, or conduct himself in any other way that a reasonable person would consider coercive. Furthermore, even if, as Mr.

Patterson asserts, Trooper Hill did not inform him that he was "free to go," such a statement is not required for an encounter to be consensual. See id. Therefore, we find that Trooper Hill's detention of Mr. Patterson for further questioning after issuing his warning ticket did not violate the Fourth Amendment.[1]

## II.

Having found that Mr. Patterson was not unlawfully detained at the time Trooper Hill requested permission to search the van, we now turn our attention to Mr. Patterson's claim that he did not give valid consent to the search. It is well-established that an officer may conduct a warrantless search consistent with the Fourth Amendment if the challenging party gives his or her voluntary consent prior to the search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Pena, 143 F.3d 1363, 1365-66 (10th Cir. 1998), cert. denied, 119 S. Ct. 236 (1998). Although Mr. Patterson permitted Trooper Hill to search the van, he argues that he did not give his voluntary consent to the search. Courts cannot presume that consent was either voluntary or involuntary. See United

---

[1] Mr. Patterson argues that because Trooper Hill "expressly and narrowly limited the scope of his request," United States v. Elliot, 107 F.3d 810, 815 (10th Cir. 1997), to one question, the encounter became nonconsensual after he answered Trooper Hill's first question, which was prior to the search request. However, because it is undisputed that Mr. Patterson failed to raise this issue before the district court, we shall not address it on appeal. See Sac & Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir. 1995). In any event, because we have found that Trooper Hill had reasonable suspicion to question Mr. Patterson further, we need not concern ourselves with whether Elliot applies in this situation.

States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996). Rather, to establish voluntary consent, the government must "show there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." Id.[2] For the purposes of appellate review, the ultimate determination of "[w]hether a consent to search that does not follow a Fourth Amendment violation was voluntary is a question of fact to be determined from the totality of the circumstances." Id.; accord United States v. Doyle, 129 F.3d 1372, 1377 (10th Cir. 1997). Thus, we accept the district court's finding of voluntary consent unless it is clearly erroneous. See United States v. Orrego-Fernandez, 78 F.3d 1497, 1505 (10th Cir. 1996).

The district court concluded that "based upon all of the facts and all of the circumstances of this case . . . Claimant Patterson gave voluntary consent to search his vehicle." Appellant's App. at 12. Our review of the record reveals no clear error in the district court's finding. We concluded above that Trooper Hill's treatment of Mr. Patterson during his questioning was not coercive. Additionally, the record contains no evidence of trickery or deception. Mr. Patterson, however,

---

[2] Because we have concluded that Mr. Patterson was not unlawfully detained at the time the search request was made, the government does not bear the heavier burden of proof which is necessary to establish the voluntariness of consent when it seeks to demonstrate that the consent to search cleansed the taint of an illegal detention, thereby rendering an otherwise invalid search valid under the Fourth Amendment. See United States v. McSwain, 29 F.3d 558, 562 (10th Cir. 1994).

argues that his consent was not unequivocal. Although his response to Trooper Hill's request to search the van was phrased "Well, I guess so," this statement, taken in the context of Trooper Hill's questioning, constitutes an affirmative response. Cf. United States v. Pena, 143 F.3d 1363, 1367 (10th Cir. 1998), cert. denied, 119 S. Ct. 236 (1998) (finding statement "go ahead" unequivocal when given in direct response to a search request). Moreover, Mr. Patterson's lack of protest during the search of the van further confirms the voluntariness of his consent. See United States v. Lopez, 777 F.2d 543, 548 (10th Cir. 1985) (finding voluntary consent in part because defendant "stood by and watched as the officers searched the vehicle and at no time objected"). Therefore, because Mr. Patterson voluntarily consented to the search of the van, the search did not constitute a Fourth Amendment violation.

III.

For the reasons discussed above, we conclude that Trooper Hill's questioning and vehicle search did not violate Mr. Patterson's Fourth Amendment rights. Accordingly, the district court correctly denied Mr. Patterson's motion to suppress. AFFIRMED.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge