**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfredo ROMAN–ROMAN,
Defendant–Appellant.**

No. 03–3276.

United States Court of Appeals,
Tenth Circuit.

Dec. 6, 2004.

Nancy Landis Caplinger, Office of the United States Attorney, Topeka, KS, for Plaintiff–Appellee.

Bruce W. Simon, Simon & Simon, Kansas City, MO, for Defendant–Appellant.

Before SEYMOUR, PORFILIO and MURPHY, Circuit Judges.

## ORDER AND JUDGMENT*

SEYMOUR, Circuit Judge.

Alfredo Roman–Roman entered a conditional plea of guilty to one count of conspiracy to possess with intent to distribute methamphetamine, preserving the right to appeal the district court's denial of his motion to suppress evidence obtained from a search of his rented vehicle after a traffic stop. We affirm.

The district court found the following facts. Kansas State Trooper Andrew Dean was on routine patrol on Interstate 70 in Kansas when he stopped a mini-van for a traffic violation. He advised the driver, Ms. Florez, of the purpose of the stop and asked for relevant documentation. Trooper Dean returned to his car, where he obtained criminal history reports and prepared a warning citation. He then returned to the mini-van and asked the occupants why they were taking I–70 from Los Angeles to Alabama, rather than I–40, a more direct route. Ms. Florez translated the question to Mr. Roman–Roman, the passenger, because he previously had been driving the mini-van. Mr. Roman–Roman responded that this was the route "they" had told him to take. Trooper Dean returned the documentation to the occupants, gave them a warning citation, and stated: "Well, you guys are free to go, thanks for your time, O.K.?" Aplt.App. at 47.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The trooper immediately continued: "Do you mind if I ask you a couple more questions, though, before you get going?" *Id.* Ms. Florez replied that she did not, prompting Trooper Dean to query: "You guys don't have any drugs or guns or anything in the car, do you?" *Id.* Ms. Florez replied negatively, to which Trooper Dean said: "Do you mind if we take a look?" *Id.* Both occupants indicated their consent to the search and, pursuant to the trooper's request, stepped out of the vehicle. During the search, approximately sixty-nine pounds of methamphetamine was found wrapped in cellophane bundles and hidden in the wall panels of the mini-van.

After an evidentiary hearing on the motion to suppress, the district court held that Mr. Roman–Roman was not illegally detained, the search followed a valid consent, and the scope of the search did not exceed that consent. Mr. Roman–Roman contests each of these conclusions on appeal, arguing in particular that he does not speak or understand English and therefore did not know he was free to leave and could not have consented to the search. When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous," and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment. *United States v. Marquez,* 337 F.3d 1203, 1207 (10th Cir.2003).

The Fourth Amendment protects against unreasonable searches and seizures. A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment. *United States v. Walker,* 933 F.2d 812, 815 (10th Cir.1991). Such a stop "is valid under the Fourth Amendment if the stop is based on an observed traffic violation.... " *United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir.1995). Mr. Roman–Roman does not contend the traffic stop itself was illegal.

■ After requesting relevant documentation, running a computer check, and issuing a citation, an officer must allow the driver to proceed without further delay or questioning unless "during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity" or "the driver voluntarily consents to the officer's additional questioning." *United States v. Sandoval,* 29 F.3d 537, 540 (10th Cir.1994). An encounter can only become consensual under this latter exception after the officer has returned the driver's documents. *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994).

In this case, the district court found that Trooper Dean had obtained consent from the occupants to question them further. The trooper first told Ms. Florez and Mr. Roman–Roman that they were "free to go." Aplt.App. at 47. The district court noted that the trooper's follow up question, "Do you mind if I ask you a couple more questions," reemphasized his previous statement that Ms. Florez and Mr. Roman–Roman were indeed free to terminate the encounter. *Id.* at 52. It is undisputed that the documentation in the possession of the trooper was returned to the occupants before the questioning or the delay that Mr. Roman–Roman challenges occurred.

When a defendant alleges he did not voluntarily consent to additional questioning or to a search, the government bears the burden of proving that consent was in fact voluntary. *United States v. San-*

*chez–Valderuten,* 11 F.3d 985, 990 (10th Cir.1993). Whether consent is freely and voluntarily given is a question of fact determined from the totality of the circumstances. *United States v. Pena,* 143 F.3d 1363, 1366 (10th Cir.1998). The government must show the consent was unequivocal, specific, and freely given without duress or coercion. *United States v. Angulo–Fernandez,* 53 F.3d 1177, 1180 (10th Cir.1995).

The district court found there was no coercion on the part of Trooper Dean at any time during the encounter. Aplt.App. at 52. The trooper presented a simple query: "You guys don't have any drugs or guns or anything in the car, do you," to which Ms. Florez replied negatively. The trooper then asked "Do you mind if we take a look?" and both occupants indicated their consent to that request. Based on the totality of the circumstances, the district court held there was no factual basis for finding that Mr. Roman–Roman was illegally detained, and further found that he had consented to the search. *Id.* at 52, 57–58.

■ Mr. Roman–Roman claims he did not understand the English language sufficiently to give valid consent to further questioning or to the search of the vehicle. However, the transcript of the suppression hearing makes clear that Mr. Roman–Roman did not raise this issue in the district court. *See id.* at 125–146. "Having failed to bring this issue to the attention of the district court at the appropriate time, the defendant may not now complain that the court failed to make findings on the issue." *United States v. Rascon,* 922 F.2d 584, 588

(10th Cir.1990), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991). "We will not consider issues which are raised for the first time on appeal unless a party demonstrates an impediment which prevented raising the argument below." *United States v. Dewitt,* 946 F.2d 1497, 1499 (10th Cir.1991); *see also United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir.1988). Mr. Roman–Roman offers no excuse for his failure to raise his ability to understand English in a timely fashion at the suppression hearing; therefore, the argument is waived.[1]

■ Finally, Mr. Roman–Roman contends that even if he gave consent, the trooper's search of the vehicle exceeded the scope of his consent. He maintains that consenting to the trooper "taking a look" inside the mini-van, does not amount to consent to the physical manipulation of the vehicle itself. The general standard for measuring the scope of consent is based on "objective reasonableness." *Pena,* 143 F.3d at 1367–68. Scope "is generally defined by its expressed object," and "is limited by the breadth of the consent given." *United States v. Elliott,* 107 F.3d 810, 814–15 (10th Cir.1997) (quotations and citations omitted). Failure to object to a search is an indication the search is within the scope of consent. *See Pena,* 143 F.3d at 1368.

The district court found that Mr. Roman–Roman "gave general consent for the trooper to search his vehicle, ... the defendant never objected to the duration or scope of the search, [and] his consent was reasonably interpreted by the officer ... to proceed as he did." Aplt.App. at 57–58.

---

1. Moreover, there is evidence in the record that Mr. Roman–Roman understood English. *See* Aplt.App. at 82–84 (Trooper Andrew Dean testifying it appeared Mr. Roman–Roman understood English because he responded to questions and instructions given exclusively in English).

This court has upheld consent searches that resulted in partially disassembling automobiles when the defendant did not object. *United States v. McRae*, 81 F.3d 1528, 1537–38 (10th Cir.1996) (removing trunk carpeting); *United States v. Santurio*, 29 F.3d 550, 553 (10th Cir.1994) (unscrewing strip holding down interior carpet and removing carpet); *United States v. Pena*, 920 F.2d 1509, 1512, 1515 (10th Cir. 1990) (removing rear quarter panel vent and cardboard found beneath); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (removing back seat). These cases support the district court's conclusion that given the totality of the circumstances here, a typical reasonable person in Mr. Roman–Roman's position would have understood that a general and unrestricted consent to a full search of vehicle included the entire vehicle and every place inside the vehicle where illegal drugs or contraband could be stored or hidden, unless he subsequently objected thereto. Because the search of the mini-van did not exceed the scope of Mr. Roman–Roman's voluntary consent, the district court properly denied his motion to suppress the evidence.

We **AFFIRM.**