**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ADOLFO MELENDREZ-MORENO,
also known as Carlos Lauro,

Defendant - Appellant.

No. 03-4297
(D.C. No. 01:02-CR-98-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **PORFILIO**, and **EBEL**, Circuit Judges.

A jury convicted Adolfo Melendrez-Moreno (Defendant) of possession of a

firearm by an illegal alien, 18 U.S.C. § 922(g)(5), and possession of methamphetamine

with intent to distribute, 21 U.S.C. § 841(a)(1), resulting in a 151-month sentence

followed by 60 months of supervised release. In this appeal, Mr. Melendrez-Moreno

challenges the district court's denial of his motion to suppress a firearm and

---

[*] Submitted on briefs at the request of the parties. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

methamphetamine seized by officers during a search of his home. We conclude Defendant's contentions that he did not verbally consent to the search and that the search exceeded the scope of the written consent form are perfunctory and without merit. Therefore, we affirm.

Ogden City, Utah police officers, Dale Weese and Juan Trujillo, and Utah parole officer, Blake Woodring, following up on tips about drug activity, approached a structure at 463 32nd Street in Ogden. The building was subdivided into two apartments, one of which was occupied by Mr. Melendrez-Moreno. Responding to the officers' knock, Mr. Melendrez-Moreno opened the door. In English, Officer Weese told him that he and the other officers were investigating complaints of suspected drug activity in the area. Officer Trujillo, who is fluent in Spanish, thinking Defendant would be "more comfortable" speaking in Spanish, repeated in that language that the officers were investigating a tip about drug activity at the house and asked if he lived there. Defendant answered, yes, and identified himself as "Carlos Lauro Angulo." When asked about the drug activity, Defendant stated he did not use or sell drugs.

Before crossing the threshold, Officer Trujillo asked Defendant, again in Spanish, if the three officers could enter the house. Defendant granted permission, and the officers entered. Officer Trujillo then asked Defendant if the officers could "search for drugs and drug paraphernalia." Again, Defendant responded, "yes." Officer Trujillo gave Mr. Melendrez-Moreno a "standard" written consent form in Spanish. The form

permitted officers to enter the residence and search for "personal items." Although, the form did not use the word *buscar*, Spanish for search, Officer Trujillo used that verb when he explained the purpose of the form. Mr. Melendrez-Moreno said he understood what he was told and signed it.

During the search, which included the attic above the kitchen and behind an access door for a water heater, officers found a methamphetamine pipe, prescription pills, a box of .45 caliber ammunition, a semiautomatic pistol,[1] a crystalline substance, and two "balls" of methamphetamine. The officers then arrested Mr. Melendrez-Moreno. Later that evening, Mr. Melendrez-Moreno told another officer his true name and stated he entered the country through Nogales.

In denying the motion to suppress, the district court rejected defense counsel's effort to infest the officers' testimony with contradiction and obfuscation and credited the government with presenting "clear and positive testimony that Mr. Melendrez-Moreno specifically and unequivocally consented to the search of his apartment, and that he did so freely and intelligently." The court stated it found Officer Trujillo was credible when he testified about coming to the apartment, explaining the officers' presence to Mr. Melendrez-Moreno, asking for permission to enter, and handling the consent form and search. The court also noted the testimony that no officer displayed a weapon or

---

[1] Defendant later told Trujillo the gun was for his protection, adding he used and sold drugs.

made any threats or promises at any time during this encounter. Further, the court noted Defendant had the physical and mental capacity to consent to the search and communicated coherently both in English and Spanish.

The court found these facts fulfilled the established test for determining whether consent is voluntary, the predicate for a valid search of a home. Further, it recognized the question of voluntariness is one of fact, channeled to satisfy a two-part test adopted by this court. Under that test, the government must: 1) "proffer 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given,'" and 2) "prove that this consent was given without implied or express duress or coercion." *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996). More than mere acquiescence must be shown to meet this test. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Applying these tests, the district court concluded the totality of the circumstances the government set out established Mr. Melendrez-Moreno voluntarily consented to the initial entry and subsequent search.

Relying on *United States v. Pena*, 143 F.3d 1363 (10th Cir. 1998), the district court quickly disposed of Defendant's second contention the scope of the search exceeded his consent. The court began its analysis by reciting the standard for measuring the scope of an individual's consent to search is that of "objective reasonableness, asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." *Id*. at 1368 (citation omitted). The object of the search defines

- 4 -

the scope of consent generally. *Id.* Further, "[c]onsent to an officer's request to search for drugs would reasonably include areas in which one would be expected to hide drugs." *Id.* From this authority, the court found that Officer Trujillo's supplemental use of the word *buscar* clearly explained the form, stating "the court is convinced Mr. Melendrez-Moreno well knew he was consenting to a search of his apartment for drugs."

The court also rejected Defendant's contention that, unlike *Pena*, he did not have an opportunity to object to the scope of the search. The court noted, however, officers asked Mr. Melendrez-Moreno if he used or had any drugs and then immediately asked to search. The similar phrasing of the questions, the court concluded, supported its finding Defendant understood what he consented to and where the officers would necessarily look. Thus, Mr. Melendrez-Moreno's consent to the search for drugs in his apartment included the attic above the kitchen and the wall heater.[2]

Now, based on selected excerpts of the officers' testimony, Mr. Melendrez-Moreno asks us to make credibility determinations about the voluntariness of his consent. In his view, the search began when the officers entered his apartment without his

---

[2] Similarly phrased requests, as noted in *Pena*, for consent to search have been held to be requests for a full search of the premises. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (holding that by giving officer consent to "scout around" his vehicle, defendant authorized full search of it, including underneath and around it); *United States v. McRae*, 81 F.3d 1528, 1537-38 (10th Cir. 1996) ( defendant's consent to officer's request to "look in" his car gave officer authorization to search the car, including lifting up carpeting in the trunk of the car); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986) (request to "look through" defendant's car authorized a thorough search).

understanding what they wanted. Defendant argues because of claimed major contradictions and omissions in Officer Trujillo's testimony, the district court should have disregarded it as "incredible." Thus, he argues, "the lower court's finding that the testimony of Officer Trujillo was credible on the issue of verbal consent was clearly erroneous." However, because only the testimony on verbal consent was inconsistent "this Court should find that no verbal consent was secured prior to the written consent."

Further, based on this same "inconsistent testimony," he contends the two officers' walking around the apartment before the consent form was signed was unlawful. Notwithstanding his prior consent to their entry into the home, Defendant argues the officers were flagrantly wandering around. He urges they "could have waited at the table until the written consent form was executed." Defendant asks us to find that there was an unlawful search prior to the signing of the written consent.

Defendant concludes with the contention that the scope of the search exceeded the consent given because he only agreed to allow the officers to "register" his personal items. Given this express limitation of the scope, he maintains the court should find the district court clearly erred in concluding the search did not exceed its scope.

Defendant forgets appellate courts do not make findings of fact; indeed, the "[e]valuation of the credibility of witnesses, the weight to be given the evidence and inferences to be drawn from the evidence are for the district court [only]." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). Moreover, as pointed out by the

government, it is irrelevant whether consent was given before the officers crossed the threshold because it is uncontradicted that Defendant gave oral consent to search before the officers began inspection of his house.

**AFFIRMED**.

ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge