**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SALVADOR CHAVEZ-CEJA,

Defendant-Appellant.

No. 98-3031
(D.C. No. 97-CR-10080-01-JTM)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **McKAY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Salvador Chavez-Ceja appeals his conviction for possession of methamphetamine with intent to distribute. On May 25, 1997, defendant was driving from his home in California to Kansas City. He was stopped by Kansas Highway Patrol Trooper Robert Jimerson while driving on Interstate 70. The traffic stop was videotaped. A search of defendant's vehicle during the stop yielded seven and a half pounds of methamphetamine. Defendant filed a motion to suppress the methamphetamine seized from his vehicle. Following an evidentiary hearing, the district court denied the motion. Defendant was convicted after a jury trial. Defendant contends the district court erred in denying his motion to suppress.

Background .

Trooper Jimerson testified he stopped defendant's car because it did not have a front license plate, required by California law, and a towel was covering the passenger's side window, obstructing the driver's view. Trooper Jimerson testified that as he approached defendant's car, he noticed that the back floorboard of the vehicle looked shallow, appearing to have been altered. The trooper asked for defendant's driver's license and registration, which defendant provided to him. Trooper Jimerson testified at the suppression hearing that defendant and his passenger appeared to be "extremely nervous, hands were shaking, I could see they were breathing very heavily." R. Vol. II, Doc. 50 at 6.

-2-

Trooper Jimerson also testified that he noticed a strong smell of air freshener coming from the vehicle. The trooper went to his patrol car, verified defendant lived in Whittier, California, and wrote out a warning ticket. Defendant does not dispute that Trooper Jimerson's initial stop was justified.

After Trooper Jimerson gave defendant the warning ticket and returned his driver's license and registration papers, he asked the occupants if they had time to answer a few questions. The trooper asked the occupants a few questions. After observing that defendant appeared to speak limited English, he asked the passenger if he spoke better English than defendant, and the passenger said his English was a little better. Trooper Jimerson asked the occupants if they had anything illegal in the car and, specifically, if they had any drugs or weapons. He was told they did not. The trooper then asked defendant in English if he could look in the car and, in Spanish, if he could search the car. [1] Trooper Jimerson testified that defendant answered "si" and pulled the car's trunk release. As the district court observed, defendant's response is not audible on the videotape of the traffic stop, but the trunk did pop open immediately after Trooper Jimerson requested consent to search the vehicle. See R. Vol. I, Doc. 28 at 3 and

_____

[1]     In Spanish, Trooper Jimerson asked, "Puedo registrar su carro?" R. Vol. II, Doc. 50 at 33, and videotape. Translated, this means, "May I search your car?" or "May I examine your car?" See Cassell's Spanish-English, English-Spanish Dictionary (1978).

videotape. The district court found that defendant's consent was freely, knowingly and intelligently given. [2] Defendant does not dispute the district court's findings that Trooper Jimerson's questioning was justified by an objectively reasonable suspicion of criminal activity and that the encounter was consensual.

After defendant opened the car trunk, Trooper Jimerson asked defendant and his passenger to get out of the car and stand ten feet in front of it during the search, which they did. The trooper first searched the trunk, then moved to the passenger side of the vehicle. He looked at, and felt underneath, the vehicle and the passenger seat. Trooper Jimerson testified that as soon as he put his hand underneath, he noticed evidence of a hidden compartment. See R. Vol. II, Doc.

---

[2] In his motion to suppress, defendant did not deny that he consented to the search, arguing instead that his consent was not freely, knowingly or intelligently given, see R. Vol. I, Doc. 21 at 8-9, and that the search exceeded the scope of the consent given, id. at 11. Defendant's brief on appeal, filed by his attorney, concedes that defendant consented to the search of the vehicle, arguing only that the search exceeded the scope of the consent. See Appellant's Brief at 2-9. However, defendant subsequently filed a pro se motion stating that he wished to deny that he had given permission to search the vehicle and asking this court to order his attorney to submit a statement of facts denying that he gave consent to the search. Defendant's motion is denied. If defendant is seeking to argue that he did not give any permission for the search, this claim was not raised in the district court, and we will not address it for the first time on appeal. See Sac & Fox Nation v. Hanson, 47 F.3d 1061, 1063 (10th Cir. 1995). If defendant is claiming that his consent was not voluntarily given, we have reviewed the record, including the videotape of the traffic stop, and agree with the district court's conclusion that defendant's consent was freely and knowingly given. See R. Vol. I, Doc. 28 at 8.

50 at 10. The trooper then asked defendant and his passenger to move further away from the car, and called for additional police assistance. Trooper Jimerson removed two bolts from the passenger front seat, removed the seat, lifted the carpet and then removed four bolts holding down a square metal plate under the seat, which was the door to a hidden compartment. This compartment did not contain any contraband. However, another officer discovered a similar hidden compartment under the driver's seat, which contained almost eight pounds of methamphetamine. Defendant and his passenger were then placed under arrest.

The defendant argued at the suppression hearing that Trooper Jimerson exceeded the scope of his consent to search the vehicle. The district court held that once Trooper Jimerson observed the first hidden compartment, he had probable cause to search it and to search the car for other hidden compartments.

## Analysis .

On appeal, defendant contends that the district court erred in holding that Trooper Jimerson had probable cause to extend the scope of the search beyond merely looking inside his car. He argues that Trooper Jimerson did not actually find a hidden compartment until he had removed the passenger seat from the car and lifted the carpet. Thus, he asserts that the trooper was relying on his consent until the time he found the first hidden compartment. He contends that a

reasonable person would not have understood a request to look in the car to include disassembling the front seat.

"The standard for measuring the scope of an individual's consent to search is that of 'objective reasonableness,' asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." See United States v. Pena, 143 F.3d 1363, 1367-68 (10th Cir. 1998), petition for cert. filed, (U.S. July 27, 1998) (No. 98-5403). The scope of a search "is limited by the breadth of the consent given." United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996) (quotation omitted). "We view the evidence in the light most favorable to the government and must uphold a district court's finding that a search is within the boundaries of the consent unless it is clearly erroneous." Pena, 143 F.3d at 1368. The ultimate reasonableness of the search and seizure is a question of law that we review de novo. See United States v. Ibarra, 955 F.2d 1405, 1409 (10th Cir. 1992).

As evidence that the search was within the scope of the defendant's consent, the government notes that defendant observed the entire search and never objected to the removal of the front seat or the dismantling of any part of the car. See McRae, 81 F.3d at 1538 (noting that defendant's failure to object to the extent of the search may be considered an indication that the search was within the scope of consent). Defendant responds that he was unable to observe the

extent of the search because he was ordered to stand a distance from the car and was not allowed to walk around. Regardless of defendant's failure to object to the search, however, we conclude that the search did not violate the Fourth Amendment's prohibition on unreasonable searches and seizures.

We conclude from our review of the record that defendant's consent to Trooper's Jimerson's request to search the car authorized the trooper to look at and feel underneath the passenger seat and the exterior of the car. See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997) (concluding that giving consent to "scout around" vehicle authorized full search of car, including underneath and around it); McRae, 81 F.3d at 1537 (concluding that consent to "look in" car authorized search of car, including lifting up carpeting in trunk). Further, because Trooper's Jimerson's request to search the vehicle came immediately after he asked if there were any drugs in the car, we think it was clear to defendant that the object of his search was drugs. See Pena, 143 F.3d at 1368. Because "[o]ne in possession of illegal narcotics does not typically leave them out in the open[, c]onsent to an officer's request to search for drugs would reasonably include areas in which one would be expected to hide drugs." Id. (holding that giving consent to search hotel room authorized removal of ceiling tiles and search above ceiling because it was clear the officer was requesting consent to search for drugs).

We also agree with the district court that, given the other suspicious factors present here, once Trooper Jimerson observed evidence of a hidden compartment, he had probable cause to remove the front seat and the carpet and plate covering the hidden compartment, and to search the entire vehicle for drugs. <u>See</u> <u>Anderson</u>, 114 F.3d at 1066 (holding that discovery of evidence of a hidden compartment, together with other suspicious factors, constitutes probable cause to conduct a thorough search, collecting cases). When Trooper Jimerson initially approached defendant's car, and when he looked under the passenger seat and car, he observed that the back floorboard appeared raised and altered. Experienced law enforcement officers "know that drug couriers do not often leave their contraband strewn across the trunk or floor of a car, and that they frequently hide drugs inside the cavities in a car's panels." <u>United States v. Mendez</u>, 118 F.3d 1426, 1432 (10th Cir. 1997) (quotation and alteration omitted). Because "signs that a vehicle's paneling or natural configuration has been altered often lead law enforcement officers to the discovery of contraband," such observations "could contribute to . . . [a] reasonable suspicion of illegal activity." <u>Id.</u>

In addition to the altered appearance of the floorboard, Trooper Jimerson observed that defendant appeared extremely nervous and he noticed a strong smell of air freshener. <u>See</u> <u>United States v. Soto-Cervantes</u>, 138 F.3d 1319, 1324 (10th Cir. 1998), <u>petition for cert. filed</u>, (U.S. June 10, 1998) (No. 97-9471)

(recognizing nervousness as one of the totality of circumstances that can provide some support for reasonable suspicion); United States v. Hunnicutt, 135 F.3d 1345, 1350 (10th Cir. 1998) (same); and United States v. Alvarez, 68 F.3d 1242, 1246 (10th Cir. 1995) (McKay, J., concurring) (noting that "we have repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry"). Thus, at the time Trooper Jimerson observed evidence of a hidden compartment, he also had evidence of other suspicious circumstances, which cumulatively provided probable cause to dismantle the front seat and lift portions of the carpet to uncover and search the hidden compartment and to search the entire vehicle for other hidden compartments. See Mendez, 118 F.3d at 1432; Anderson, 114 F.3d at 1066. Defendant's argument that the trooper did not actually find the hidden compartment until after he had removed the front seat is unavailing; it is uncontroverted that the trooper discovered evidence of a hidden compartment as soon as he looked and felt underneath the passenger seat and the exterior of the car.

Accordingly, judgment of the United States District Court for the District of Kansas is AFFIRMED. All other outstanding motions are denied.

Entered for the Court

Monroe G. McKay

-9-

Circuit Judge