**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HOWARD LEE RAMSTAD,

    Defendant-Appellant.

No. 99-3277

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 98-CR-40085-DES)

---

Joseph D. Johnson of the Law Office of Joseph D. Johnson, Chtd., Topeka, Kansas, for
Defendant-Appellant.

Gregory G. Hough, Assistant United States Attorney (Jackie N. Williams, United States
Attorney, with him on the brief), Topeka, Kansas, for Plaintiff, Appellee.

---

Before **BALDOCK**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    A federal grand jury indicted Defendant Howard Lee Ramstad charging him with

possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Defendant entered a conditional plea of guilty pursuant to Fed. R. Crim. P. 11(a)(2),

reserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Defendant to 51 months imprisonment and Defendant appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and remand for appropriate fact finding.

I.

In July 1998, Kansas Highway Patrol Trooper Brian K. Smith observed Defendant's motor home traveling east on Interstate 70, just outside Topeka, Kansas. Trooper Smith noticed Defendant's vehicle displayed only one California registration plate on the rear of the vehicle. Believing that California law required vehicles to display two registration plates, Trooper Smith ran a check on the registration plate. The dispatcher informed Trooper Smith that the plate was assigned to a 1964 GMC. Because Trooper Smith could not determine the make or year of the vehicle, he stopped Defendant's vehicle by activating his emergency lights.

Defendant pulled over, exited his motor home, and produced a valid driver's license and proof of insurance. Based on his observations of Defendant, Trooper Smith believed Defendant was extremely nervous. Defendant accompanied Trooper Smith to his patrol car where he issued Defendant a written warning for failure to display a front registration plate. Trooper Smith returned Defendant's documents to him and told him that was all Trooper Smith had for him. Trooper Smith then asked Defendant if he could ask him some more questions and Defendant agreed. Next, Trooper Smith asked

2

Defendant if he was hauling anything illegal, such as drugs, guns, weapons, or contraband. Defendant stated that he was not. Trooper Smith asked to take "a quick look around" Defendant's vehicle, stating that he "wasn't going to tear anything up." When Defendant agreed, Trooper Smith directed him to stand, along with his passenger, by the side of the highway, while Trooper Smith entered the motor home.

While searching the bedroom area, Trooper Smith noticed some irregularities: a recessed area; visible scratches and scrapes on the side walls; and fresh caulking, screws and trim. Trooper Smith further observed that the speaker grill covers did not cover speakers, but just covered a small hole with a wire. Trooper Smith examined the speaker grill covers and unscrewed them.[1] Trooper Smith then exited the vehicle and walked to the rear of the vehicle. He looked up at the back window of the passenger side and observed a depth discrepancy in unaccounted space of approximately 28 inches to the rear of the vehicle. At that point, Trooper Smith contacted the Topeka police department and requested a K-9 narcotics detection dog.

About ten to fifteen minutes later, Officer Larry Falley arrived with his K-9 dog. Trooper Smith informed Officer Falley that he suspected something was amiss in the rear of the motor home. The dog alerted to the area where Trooper Smith had observed the fresh scratches and marks. Trooper Smith directed Defendant to drive the motor home to

---

[1] The record is unclear regarding whether Trooper Smith unscrewed the speaker covers before or after observing that they did not cover speakers.

3

a nearby highway patrol facility.  Upon arrival, Trooper Smith removed a panel of the vehicle and discovered 38 clear plastic-wrapped bundles of marijuana totaling 567.3 pounds.

Based on the foregoing, the Government charged Defendant with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  Defendant filed a pretrial motion to suppress the evidence of the marijuana as fruit of an illegal traffic stop.  Defendant argued the traffic stop, made without probable cause or reasonable suspicion, violated the Fourth Amendment.  In addition, Defendant argued the Government did not prove that he gave consent sufficient to purge the primary taint of the illegal stop.  Finally, Defendant claimed that even if the initial traffic stop was legal, or Defendant's subsequent consent purged its illegality, Trooper Smith exceeded the scope of Defendant's consent when he unscrewed the speaker covers.

At the conclusion of a suppression hearing, the district court summarily denied Defendant's motion to suppress without making any findings of fact.  Instead, the district court merely stated:

> As to the motion for an order suppressing illegally obtained evidence, the motion is denied and overruled.  We're basing our decision primarily on Tenth Circuit law, which we believe is inconsistent with the position of the defendant.  They want to change that law, we'll let them do it.  I'm not going to try it for them.  So that's the ruling of the court.

Aplt's App. at 31.

4

## II.

In reviewing the denial of a motion to suppress, we review a district court's factual determinations for clear error and ultimate determinations of reasonableness under the Fourth Amendment de novo. United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). "Factfinding is the basic responsibility of district courts, rather than appellate courts . . . ." Pullman-Standard v. United Steelworkers of Am., 456 U.S. 273, 291 (1982) (internal brackets and quotations omitted). Pursuant to Fed. R. Crim. P. 12(e), "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." A district court need not place all of its findings on the record provided the essential bases of its decision are apparent. United States v. Toro-Pelaez, 107 F.3d 819, 824 (10th Cir. 1997).

Here, the district court did not make any findings or otherwise explain the basis for its decision. While remand may be unnecessary where "the proceedings below resulted in a record of amply sufficient detail and depth from which the determination may be made," United States v. Fernandez, 18 F.3d 874, 881-82 n.7 (10th Cir. 1994), we believe the record below is insufficiently developed regarding the suppression issue. Accordingly, we remand to the district court for further fact-finding.[2]

---

[2] We note that where the district court makes no express factual findings, we normally uphold the district court's ruling if any reasonable view of the evidence supports it. United States v. Broomfield, 201 F.3d 1270, 1273 (10th Cir. 2000). Here, however, the district court summarily denied Defendant's motion to suppress, providing no findings

(continued...)

On remand, the district court must make specific findings as to whether the original traffic stop violated the Fourth Amendment, and if so whether Defendant subsequently gave consent sufficient to remove the taint of the illegal stop. If a consensual search follows a Fourth Amendment violation, "the government must prove both the voluntariness of the consent under the totality of the circumstances and that there was a break in the causal connection between the illegality and the evidence obtained." United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994).

If the district court finds either that the traffic stop was legal and Defendant gave consent or that the stop was illegal but Defendant gave consent sufficient to remove the taint of the illegal stop, the district court must then make factual findings regarding whether the scope of Trooper Smith's search exceeded the scope of Defendant's consent. "The scope of a search 'is limited by the breadth of the consent given.'" United States v. Chavez-Ceja, No. 98-3031, 1998 WL 654986, at *2 (10th Cir. Sept. 21, 1998) (unpublished) (quoting United States v. McRae, 81 F.3d 1528, 1537 (10th Cir.1996)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable

---

[2](...continued)
of fact and failing to explain the basis for its decision. See United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994) (remanding to district court for factual findings as to voluntariness of consent); United States v. Mains, No. 92-4066, 1993 WL 26827, at *1 (10th Cir. Feb. 5, 1993) (unpublished) (remanding to district court for factual findings regarding alleged consent to search).

person have understood by the exchange between the officer and the suspect." <u>United States v. Elliot</u>, 107 F.3d 810, 814 (10th Cir. 1997) (quoting <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991)).

We REMAND to the district court for further proceedings consistent with this opinion.

*United States v. Ramstad*, No. 99-3277

**MURPHY**, Circuit Judge, Dissenting


The majority is properly frustrated by the district court's failure to make any findings of fact or even explain the legal basis for its decision to deny Ramstad's suppression motion. *See* Majority Op. at 4-5. It is indeed the district court's responsibility to make findings of fact when necessary to resolve a motion to suppress evidence. *See* Fed. R. Crim. P. 12(e). When the district court abdicates that responsibility, this court's task in reviewing the suppression ruling is made substantially more difficult, and sometimes impossible.

I nonetheless dissent from the Majority insofar as it states that factual findings are necessary to decide the legality of the initial traffic stop. Judicial efficiency suggests we decide those issues we can when such decisions will narrow the district court's task on remand. *See generally Park County Resource Council v. United States Dep't of Agric.*, 817 F.2d 609, 617-18 (10th Cir. 1992) ("[R]emand is not necessary where there is no dispute regarding the underlying facts and where it is in the interest of judicial economy and efficiency to decide the matter."), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). The evidence pertinent to the threshold issue of the lawfulness of the stop is essentially undisputed. Considering that undisputed evidence and viewing any disputed evidence in a

light most favorable to the government, this court should conclude the traffic stop violated the Fourth Amendment. *Cf. United States v. Broomfield*, 201 F.3d 1270, 1273 (10th Cir. 2000) (noting that when the district court fails to make findings of fact, this court may affirm its ruling on a suppression motion if any reasonable view of the evidence supports that ruling).

In determining whether an investigatory vehicle stop is permissible under the Fourth Amendment, this court's "sole inquiry is whether the particular officer had a reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations *of the jurisdiction*." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (quotation omitted) (emphasis added). For this court to conclude the detention of Ramstad's vehicle was constitutionally sound, therefore, we must determine that before Trooper Smith executed the stop, he had a reasonable suspicion Ramstad had violated a *Kansas* traffic or equipment regulation or statute.

At the suppression hearing, Trooper Smith testified that he stopped Ramstad's vehicle because he noticed it carried a California license plate only on the rear and he believed California law required vehicles registered in that state to also display a license plate in the front. Trooper Smith further testified that statutory interstate compacts enacted in Kansas and which California had joined authorized him to enforce California's license plate requirements. In other words,

2

the government contends Ramstad's failure to comply with California license plate requirements constitutes a violation of Kansas law. No reasonable reading of the interstate compacts or other statutes on which the government relies, however, supports that contention.

The first interstate compact on which the government relies to justify the traffic stop is the "Drivers License Compact," Kan. Stat. Ann. § 8-1212. Contrary to the government's interpretation of this statute, the Drivers License Compact merely obligates the State of Kansas to report violations of Kansas traffic laws and ordinances committed in Kansas by out-of-state motorists to those motorists' home states. In no way does this compact render an out-of-state motorists' non-compliance with the home state's license plate requirements a violation of Kansas law.

The second interstate compact to which the government points is the "Nonresident Violator Compact," *id.* § 8-1219.[1] Like the Drivers License Compact, the Nonresident Violator Compact has nothing to do with the authority of Kansas law enforcement officers to enforce license plate requirements of

---

[1]Ramstad asserts that Trooper Smith was mistaken in his belief that California is a member of the Nonresident Violator Compact. Even if Trooper Smith was so mistaken, this mistake is irrelevant to our analysis because whether or not California is a member of the Nonresident Violator Compact, this compact does not justify the stop of Ramstad's vehicle.

3

foreign states belonging to the compact. Instead, this compact merely prescribes procedures by which an out-of-state motorist cited for a traffic violation in Kansas can leave the state without having to post a bond.

Finally, the government contends that the Kansas license plate statute, *id.* § 8-142, requires out-of-state drivers traveling in Kansas to comply with the license plate requirements of their home states. Smith even cited this particular Kansas statute in his written warning to Ramstad. The government, however, fails to recognize that § 8-142 explicitly applies only to vehicles registered in Kansas. Section 8-142 provides that one cannot "operate . . . upon a highway . . . any vehicle . . . which does not have attached thereto and displayed thereon *the license plate or plates* assigned thereto *by the division*." *Id.* (emphasis added). For purposes of this section, "the division" is defined as "[t]he division of vehicles of the department of revenue." *Id.* § 8-126(v). Additionally, "license plate" means "any plate, tag, token, marker or sign issued . . . for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws *of this state* . . . ." *Id.* § 8-126a (emphasis added). Ramstad, therefore, did not violate § 8-142 by driving in Kansas a vehicle registered in California that did not display two license plates.

In its attempt to justify the stop, the government has failed to point to any Kansas statute or regulation which Ramstad violated. Indeed, the Kansas statutes

4

which do grant Trooper Smith authority to enforce the law expressly limit that authority to "enforcement of the traffic and other laws *of this state* relating to highways, vehicles[,] and drivers of vehicles." *Id.* § 74-2105(a) (emphasis added); *see also id.* § 74-2108 (vesting in highway patrol troopers the "power and authority of peace, police[,] and law enforcement officers"); *id*. § 74-5602(e) (defining police officer's duties as "the prevention or detection of crime and the enforcement of the criminal or traffic laws *of this state or any municipality thereof*" (emphasis added)).

The question remaining, therefore, is whether the vehicle stop was nonetheless constitutional because it was premised on Trooper Smith's mistaken view of Kansas law such that he believed Ramstad had committed a Kansas traffic violation. Recently, the Fifth Circuit rejected the government's argument that although a detained motorist had not actually violated any law, the evidence seized should be admissible under a good faith exception because the officer had a good faith but incorrect belief that a broken taillight on the detained vehicle constituted a violation of a Texas statute. *See United States v. Lopez-Valdez*, 178 F.3d 282, 287-89 (5th Cir. 1999). The *Lopez-Valdez* court reasoned, "[I]f officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems

boundless and the costs to privacy rights excessive." *Id.* at 289. Similarly, the Ninth Circuit recently held that an officer violated a motorist's Fourth Amendment rights when he stopped the motorist in the absence of a traffic violation, even though the officer's mistaken view of the law led him to believe a traffic infraction had occurred. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000).

This court has stated "that the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, *as distinguished from a reasonable mistake of law*." *United States v. Salinas-Cano*, 959 F.2d 861, 865 (10th Cir. 1992) (quotation omitted) (emphasis added). It thus appears our precedent is in line with the position of the Fifth and Ninth Circuits that the failure to understand the law by the very person charged with enforcing the law is not objectively reasonable. That is particularly true in this case when no reasonable person could read the statutes on which Trooper Smith and the government rely as authorizing a Kansas officer to enforce California license plate requirements. Because Trooper Smith lacked a reasonable suspicion that Ramstad had violated any Kansas traffic regulation or statute, the investigatory detention of Ramstad's vehicle ran afoul of the Fourth Amendment.

Having reached that conclusion, I would remand for findings on the two remaining issues: (1) whether Ramstad's consent to search was sufficiently

6

attenuated from the illegal detention to render his consent voluntary in fact; and (2) whether the search ultimately conducted remained within the scope of Ramstad's consent. To this end, the district court on remand should make findings not only regarding the voluntariness and scope of Ramstad's consent, but also concerning the following factors which are relevant to the attenuation and thus voluntariness determination: whether Trooper Smith informed Ramstad that he was free to go or that he could refuse consent; the amount of time between the illegal detention and the consent; the presence and extent of intervening circumstances between the illegal stop and the consent; and the purpose and flagrancy of Trooper Smith's misconduct. *See generally Brown v. Illinois*, 433 U.S. 590, 603-04 (1975); *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir. 1996).

In all other respects, I concur with the Majority's remand.