**F I L E D**

**UNITED STATES COURT OF APPEALS**

**AUG 27 2002**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JUAN HOOPER, aka Frank William
Halstead,

     Defendant - Appellant.

No. 02-7026
(D.C. No. 01-CR-48-S)
(E.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

Juan Hooper entered a conditional guilty plea to possession of cocaine with

intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2,

reserving the right to appeal the district court's denial of his motion to suppress.

Hooper now appeals and, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we

affirm.

---

[*] The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

# I

On June 14, 2001, Oklahoma Highway Patrol trooper Shawn Lee Griffey pulled over the van Hooper was driving on Interstate 40 after observing him traveling at fifty-six miles per hour in a forty-five mile per hour construction zone. Griffey informed Hooper that he had been stopped for speeding and requested his driver's license and insurance verification. Hooper gave Griffey a California driver's license in the name of Frank Halstead, informed Griffey that the vehicle was rented, and provided the car-rental agreement. The agreement stated that the period of the rental was June 4 to June 11, 2001, and that the vehicle was rented to Hector Jauregui. Also noted on the agreement was a statement that there were "[n]o 'additional authorized operators' without Hertz' prior written approval." (Appellant's App. at 4.) Hooper did not provide Griffey with any additional documentation indicating that he was authorized to operate the vehicle. Griffey asked who Jauregui was, and Hooper said he was a friend who rented the car for him because Hooper had bad credit. Hooper told Griffey that he was on his way to Harrisburg, Pennsylvania, to visit relatives and was on the third day of his trip.

After reviewing the driver's license and rental agreement provided by Hooper, Griffey asked Hooper to exit the vehicle and have a seat in his patrol car. Hooper complied, and Griffey gave him a warning for the speeding

violation. The district court found that as Hooper was signing the warning, Griffey asked him "if he had anything illegal in the vehicle," to which Hooper replied he did not. (Id.) The court further found that as Griffey was handing Hooper back the driver's license, rental agreement, and warning, Griffey asked if he could "look inside the vehicle." (Id.) Hooper said that Griffey could "go ahead and look." (Id.)

Before beginning his search, Griffey had Hooper stand away from the vehicle in an adjacent ditch, some fifteen to twenty feet away. While conducting his search of the van, Griffey "noticed that the plastic molding from the floor and the rear quarter panel did not seem to fit together in a proper manner." (Id. at 5.) He removed the ashtray from the molding and saw the corner of a plastic package; he felt the package and believed it to be tightly packed, containing an illegal drug. Griffey arrested Hooper, and in a further search of the vehicle discovered thirteen additional packages, which were later determined to contain cocaine. During the book-in process, Hooper correctly identified himself as Juan Hooper, rather than Frank Halstead.

On September 4, 2001, Hooper filed a motion to suppress. This motion was denied on September 20, 2001. On appeal, Hooper contends that the district court erred because he was illegally detained, because any consent he gave to a search

of the van was the involuntary product of an illegal detention, and because the officer's search exceeded the scope of the consent given by Hooper.

## II

In reviewing the district court's denial of Hooper's motion to suppress, we view the evidence in the light most favorable to the district court's determination and accept the factual findings of the district court unless they are clearly erroneous. United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). Our ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review de novo. Id.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment, United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997), and such a stop is properly analyzed as an investigative detention that must be supported by a reasonable, articulable suspicion that criminal activity is afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). Applying the principles of Terry v. Ohio, we evaluate the reasonableness of the stop based on "whether the officer's action was justified at is inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 20 (1968).

Hooper argues that Griffey lacked the reasonable articulable suspicion of illegal activity necessary to extend the duration of the detention. An investigative

detention should "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion). However, it is permissible for a law enforcement officer to prolong the length of the initial detention if the officer "has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998).

We have consistently held that a driver's "inability to offer proof of ownership or authorization to operate the vehicle" is a factor that may support a reasonable articulable suspicion of illegal activity. See, e.g., United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) (noting that a "defining characteristic of our traffic stop jurisprudence is the defendant's lack of a valid registration, license, bill of sale or some other indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen"); United States v. Horn, 970 F.2d 728, 732 (10th Cir. 1992); United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991); United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990).

Hooper was unable to provide Griffey with any documents indicating that he was either the owner or authorized to operate the vehicle. Furthermore, Hooper stated that he was within the weekly rental rate, which was contradicted

by the rental agreement, and he was vague as to why he rented the vehicle for such a long period of time before he started his trip. The totality of these circumstances, viewed in the light most favorable to the district court's determination, supports a conclusion that Griffey's further detention of Hooper was supported by a reasonable suspicion of illegal activity.

Hooper's second claim is that the consent he gave Griffey to search his vehicle was involuntary because there was not enough separation in time between his illegal detention and his grant of consent. Because we have determined that Hooper was not illegally detained, the consent that he gave Griffey to search his vehicle could not have been involuntary on this basis. See United States v. Hill, 199 F.3d 1143, 1150 n.5 (10th Cir. 1999). Hooper does not provide an alternative theory as to why his consent was involuntary, and we conclude that he voluntarily consented to the search of his vehicle.

Arguing that Griffey could only have had a reasonable suspicion that Hooper was driving a stolen vehicle, Hooper contends that the subsequent search was not related to this suspicion. Griffey's search of Hooper's vehicle, however, was based on Hooper's consent. Because we conclude that Hooper's consent was voluntary, we need not address this argument.

Finally, Hooper contends that Griffey's search of the vehicle exceeded the scope of Hooper's consent. We examine the totality of the circumstances to

determine whether a search remains within the boundaries of the consent given. United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990). Hooper told Griffey that he could "go ahead and look" after Griffey asked if he could "look inside the vehicle." (Appellant's App. at 4.) While searching the vehicle Griffey removed an ashtray, which Hooper argues was beyond the scope of his consent to "look inside the vehicle." In Pena, defendant argued that he only gave the law enforcement officer consent to "look" inside his car, and that the officer's use of a screwdriver to remove the rear panel of the vehicle exceeded the scope of his consent. 920 F.2d at 1515. We decided we would not "attach an unduly restrictive meaning to the officer's request to 'look' inside the vehicle," and concluded that the "search was conducted within the general scope of the permission granted." Id.

Applying the court's reasoning in Pena, we conclude that Griffey's removal of an ashtray was within the scope of the permission granted by Hooper to "look inside the vehicle." Furthermore, Hooper did not object to this aspect of the search. Hooper argues that it was not possible for him to object because he was fifteen to twenty feet away from the vehicle while Griffey was conducting the search. The district court found that "Hooper was nonetheless in a position to object to any search technique utilized by Griffey . . . . The fact that Hooper could not see every movement by Griffey after Griffey reached into the van did

not preclude Hooper from initially objecting to Griffey's entry into the van at the sliding door." (Appellant's App. at 11.) We agree.

## III

We **AFFIRM** the district court's denial of Hooper's motion to suppress. The mandate shall issue forthwith.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge