**UNITED STATES of America, Plaintiff,**

v.

**Juan Carlos OLIVAS, Defendant.**

**No. 04–40119–SAC.**

United States District Court, D. Kansas.

Dec. 30, 2004.

Anthony W. Mattivi, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant's motion to suppress (Dk.19) evidence seized during a search of the defendant's car following a traffic stop. The defendant has filed an affidavit in support

of his motion. (Dk.20). The government's response (Dk.21) opposes the motion. The parties presented evidence and oral argument in support of their positions on December 14, 2004. Having reviewed all matters submitted and having researched the relevant law, the court is ready to rule on the motions.

## INDICTMENT

The defendant is charged with a single count of possessing with the intent to distribute 41 kilograms of cocaine on September 14, 2004, in violation of 21 U.S.C. § 841(a)(1).

## FACTS

Around 2:19 p.m. on September 14, 2004, Sergeant Kelly Schneider with the Russell County Sheriff's Department, Russell, Kansas, was traveling westbound on I–70 interstate highway near milepost 195. While cresting an incline and slowing to turn around in the median, Sergeant Schneider observed a white Ford Focus traveling eastbound in the right lane. As it came over the top of the incline, the Ford Focus swerved into the left lane by one-half of its width and then moved back into the right lane. Though a stiff wind was blowing from the south, Sergeant Schneider had not seen other vehicles, not even semi-tractor trailers, swerve into different lanes, and he did not believe the wind had caused the Ford Focus to swerve to this degree. Sergeant Schneider completed his u-turn in the median and caught up with the Ford Focus. For officer safety reasons, he observed that the car had a driver and one passenger, but he could not determine the sex or race of either occupant because of the dark-tinted windows.

Sergeant Schneider activated his emergency lights and pulled over the Ford Focus for failure to maintain a single lane. He approached the stopped car on the passenger side and explained the reason for the stop. He observed that the driver appeared extremely nervous, as evidenced by fast and jumbled speech, shaking hands, squirming in the seat, short and rapid breathing, quivering voice, and avoiding eye contact. The driver provided a California driver's license and registration which identified him as Juan Carlos Olivas. Olivas said he was self-employed and owned a tree service. Olivas said they were traveling to Indianapolis, Indiana, for a wedding. Schneider recognized the defendant's stated travel plans as consistent with drug trafficking as California is a source state for illegal drugs and Indianapolis is a large destination city. Schneider also observed that Olivas remained excessively nervous even after being told that only a warning would be issued.

Schneider went to his patrol car to check the license and registration and write the warning. He telephoned Russell County Deputy Tim Bilbrey and requested his assistance at the scene. After learning the license and registration were valid, Schneider returned to the Focus just as Deputy Bilbrey was arriving. Schneider handed Olivas the license, registration and a copy of the written warning. Olivas' hands were still shaking badly. Schneider explained the warning, told the defendant to be careful, and wished them a safe trip. The break lights on the Ford Focus came on evidencing that Olivas had put the car into gear to drive away. Olivas then asked if he had to pay any money, and Schneider answered no and took a step away from and towards the rear of the car.

Based on defendant's extreme and unabated nervousness and stated travel plans, Sergeant Schneider decided to seek the defendant's consent to search the car. The video shows that Schneider moved forward but from a distance of two or three feet from the passenger window asked, "Mind if I ask you another question?" Hearing an affirmative response, Schneider leaned forward and explained

that "lots of illegal contraband, like marijuana and cocaine," are transported on I–70 and then asked if the defendant was transporting any. When Olivas denied doing so, Schneider asked, "Mind if I take a look in your car?" Olivas consented, so Schneider requested Olivas to put the car into park and to exit the car with the passenger. At this point, Deputy Bilbrey stepped forward to assist with the search.

The defendant and his passenger stood in the ditch approximately ten feet from the front of the car, as Sergeant Schneider began his search. He leaned into the car and visually scanned the interior looking for a latch to open the trunk. Finding none, he took the keys and unlocked the trunk. The defendant saw the sergeant open the trunk and search it. The video does not show the defendant motioning or saying anything in objection to the search of his trunk.

Sergeant Schneider's search revealed a four-inch void in the floor of the trunk. Deputy Bilbrey who had recently purchased a Ford Focus commented that his trunk was much deeper. Sergeant Schneider knew from training and experience that secret compartments are frequently used to transport illegal contraband or money. Unable to gain immediate entry to the compartment, it was decided to arrest the defendant and passenger and transport the Ford Focus to the sheriff's department. The video shows Deputy Bilbrey standing at the rear of the Ford Focus and calling to the defendant who responded by joining the officers. Told that the car had a secret compartment, Olivas was placed under arrest and handcuffed. The passenger also was handcuffed. Both were transported to the Russell County Jail. Sergeant Schneider continued to search the trunk area. Seeking to confirm his belief that the compartment contained contraband, Schneider employed his drug detection dog who alerted to the trunk area.

The Ford Focus was driven to the Sheriff's office and a hole was drilled into the secret compartment. On the end of the drill bit was a white substance which field-tested positive for cocaine. The deputies eventually pried open the secret compartment and found 41 kilo-sized packages of white powder weighing a total of 107.1 pounds.

## ARGUMENTS AND ANALYSIS

The defendant first contends that Sergeant Schneider did not have probable cause or reasonable suspicion for making the traffic stop. The defendant next argues that his consent was the product of an illegal detention based on an unlawful traffic stop and was not knowing and voluntary. The defendant challenges the search of the trunk as exceeding the scope of his consent. Finally, the defendant argues Sergeant Schneider lacked reasonable suspicion to employ his drug detection dog.

### Initial Traffic Stop and Detention

A traffic stop is a seizure under the Fourth Amendment. *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir.2003). Akin to investigative detentions, routine traffic stops are analyzed under the investigative detention principles outlined in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). The reasonableness of a stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's action "was reasonably related in scope to the circumstances that first justified the interference." *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir.1998) (quotation omitted).

In deciding the validity of the initial stop, the court looks at whether it was "objectively justified." *United States v. Botero–Ospina,* 71 F.3d 783, 788 (10th Cir. 1995) (en banc), *cert. denied,* 518 U.S. 1007, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996). To be valid, the officer must have either " '(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.' " *United States v. Zubia–Melendez,* 263 F.3d 1155, 1160 (10th Cir.2001) (quoting *United States v. Ozbirn,* 189 F.3d 1194, 1197 (10th Cir.1999)). The constitutional reasonableness of a traffic stop does not depend on the officer's actual motive in conducting the stop. *Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In short, the initial traffic stop is reasonable if the officer observed a traffic violation or has reasonable articulable suspicion that a traffic or equipment violation occurred. *United States v. Nichols,* 374 F.3d 959, 964 (10th Cir.2004), *petition for cert. filed,* 73 U.S.L.W. 3297, —— U.S. ——, 125 S.Ct. 509, —— L.Ed.2d —— (2004).

■ Sergeant Schneider's testimony that he observed the Ford Focus swerve across the centerline by almost one-half of its width before returning to the right lane [1] was sufficient probable cause for a violation of K.S.A. ·§ 8–1522, which requires a vehicle to be driven "as nearly as practicable entirely within a single lane." In *United States v. Ozbirn,* 189 F.3d 1194, 1198 (10th Cir.1999), the court held that "under the language of the Kansas statute, when an officer merely observes someone drive a vehicle outside the marked lane, he does not automatically have probable cause to stop that person for a traffic violation." Rather, "the court must conduct a fact-specific inquiry into 'all the surrounding facts and circumstances to determine whether the officer had the probable cause necessary to justify the stop.' " *United States v. Zubia–Melendez,* 263 F.3d 1155, 1161 (10th Cir.2001) (quoting *Ozbirn,* 189 F.3d at 1198). While the testimony and video establish there was a stiff wind, Sergeant Schneider testified that other vehicles were not weaving outside their lanes and that the wind could not account for the defendant's degree of swerving. The video does not contradict Sergeant Schneider's testimony that the wind was not strong enough to cause the defendant's car to swerve suddenly several feet into another lane of traffic. These facts are enough to afford Sergeant Schneider under the relevant circumstances with probable cause to believe defendant had committed

---

1. The defendant's testimony to the contrary is not credible. He gave inconsistent explanations for his behavior and implausible accounts of what happened. For example, the defendant averred that he was "cold and nervous" as a possible explanation for his shaking, but he testified that his shaking was due to a "family condition." As the government proved during the hearing, it was not cold on September 14, 2004. The defendant's demonstration of his "family condition" on the witness stand was not credible. Another example is the defendant's explanation that he could not have communicated during the search with the deputies from where he was standing because the wind was too strong. Yet, the video shows Deputy Bilbrey calling to the defendant from the same distance and the defendant hearing and responding. The defendant also testified that he first saw Sergeant Schneider when he drove past a traffic stop in the westbound lanes and their eyes met. This explanation is implausible in that it is unlikely that Sergeant Schneider would leave one traffic stop and immediately begin pursuing the defendant's car for no apparent reason and is equally unlikely that their eyes· could met under the conditions across three lanes of traffic and a grassy median and through the dark tinted windows of the Ford Focus.

a violation of K.S.A. § 8–1522. The court finds that the initial traffic stop was valid.

### Lawfulness of Detention

"Generally, an investigative detention must 'last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Patten,* 183 F.3d 1190, 1193 (10th Cir.1999) (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Its scope must be carefully tailored to its underlying justification. *United States v. Gutierrez–Daniez,* 131 F.3d 939, 942 (10th Cir.1997), *cert. denied,* 523 U.S. 1035, 118 S.Ct. 1334, 140 L.Ed.2d 494 (1998). But, "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation". *United States v. Zubia–Melendez,* 263 F.3d at 1161. Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay. *Patten,* 183 F.3d at 1193; *United States v. Anderson,* 114 F.3d 1059, 1064 (10th Cir.1997). A longer detention for additional questioning is permissible if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or the initial detention changes to a consensual encounter. *United States v. Hunnicutt,* 135 F.3d at 1349.

"A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." *United States v. Hernandez,* 93 F.3d 1493, 1498 (10th Cir.1996). Supreme Court precedent is clear "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual.'" *Florida v. Bos-*

*tick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). "A police officer does not have to inform the citizen they are free to disregard any further questioning for the encounter to be consensual." *United States v. Manjarrez,* 348 F.3d 881, 886 (10th Cir.2003) (citation omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 1622, 158 L.Ed.2d 259 (2004). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In deciding if a police-citizen encounter amounts to a seizure, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *United States v. Hill,* 199 F.3d 1143, 1147 (10th Cir.1999) (quoting *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Put another way, "[a] person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way." *United States v. Hernandez,* 93 F.3d at 1498 (citation omitted). "[E]very case turns on the totality of the circumstances presented." *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994). Factors relevant to whether a reasonable person would not feel free to terminate the encounter with police include: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged

retention of a person's personal effects; a request to follow the officer to the station; interaction in a nonpublic place; and absence of other members of the public. *United States v. Sanchez,* 89 F.3d 715, 718 (10th Cir.1996). No one factor is dispositive in this analysis. *United States v. Glass,* 128 F.3d 1398, 1406 (10th Cir.1997). "An officer's request for consent to search does not taint an otherwise consensual encounter 'as long as the police do not convey a message that compliance with their request is required.'" *United States v. Pena,* 143 F.3d 1363, 1367 (10th Cir.) (quoting *United States v. McCurdy,* 40 F.3d 1111, 1119 (10th Cir.1994)), *cert. denied,* 525 U.S. 903, 119 S.Ct. 236, 142 L.Ed.2d 194 (1998).

 A reasonable person would have believed he was free to leave after Sergeant Schneider returned the license and registration, wished him a safe trip, and then took a short step away from the car. While wishing someone a safe trip is not quite the same as telling someone he is free to go, the defendant showed he understood the message as he placed the car in gear preparing to drive away. There is no evidence of a coercive showing of authority by Sergeant Schneider's actions, tone of voice, or words as to lead the defendant into reasonably believing that he had to answer the sergeant's questions before he could leave. The court concludes that a reasonable person in the defendant's situation would have felt free to refuse the sergeant's request to answer additional questions and to leave the scene.

### Consent to Search

 The defendant testified that he consented to Sergeant Schneider's request to search his car but that he felt compelled by Schneider to exit the car during the search. If the person in control of a car voluntarily consents to its search, the officers may search the car without a warrant

and not violate the Fourth Amendment. *United States v. Taverna,* 348 F.3d at 878. Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Busta-monte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A court makes this determination without presuming the consent was voluntary or involuntary. *United States v. Hernandez,* 93 F.3d at 1500.

 For this exception to apply, the government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *United States v. Soto,* 988 F.2d 1548, 1557 (10th Cir.1993). The government does not discharge its burden "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina,* 391 U.S. 543, 549, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Under the two-part test for determining whether consent to search was given, the government must: "(1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given; and (2) prove that this consent was given without implied or express duress or coercion." *United States v. Taverna,* 348 F.3d at 878. This determination is made upon considering the totality of the circumstances. *Schneckloth,* 412 U.S. at 225–27, 93 S.Ct. 2041.

 The testimony of Sergeant Schneider and the defendant is clear and positive proof that the defendant gave unequivocal and specific consent to search. The video confirms that Sergeant Schneider simply requested the defendant and his passenger to put the car in park and to wait in the ditch while the search was conducted. The defendant voiced no objections or concerns over following the sergeant's request. The record confirms that the defendant's consent was freely and intelligently given, as he did not appear to be under the influence of any alcohol or

drugs or to be suffering from any mental disease or defect. Nor is there anything on the video or from the testimony to suggest the defendant's consent could be the product of implied or express duress or coercion. There were no threats or promises made, and no coercive means employed. The court finds that the defendant's consent to search was freely and voluntarily given and that no show of force or display of weapons was used to obtain this consent.

### Scope of Consent

■■ The defendant next argues that his consent was limited to the passenger area of the car and never included the trunk. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect." *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir.1997) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297(1991)). The court looks at the totality of the circumstances to determine whether a search remained within the bounds of the consent given. *United States v. Hooper*, 47 Fed.Appx. 531, 534 (10th Cir.2002). Scope "is generally defined by its expressed object," and "is limited by the breadth of the consent given." *United States v. Elliott*, 107 F.3d at 814–15. Failure to object is an indication that the search did not exceed the scope of consent. *See Pena*, 143 F.3d at 1368. Where the expressed purpose of the search is to look for drugs or contraband, "that certainly implies that the officer could look wherever drugs might be hidden." *United States v. Ramstad*, 308 F.3d 1139, 1146–47 (10th Cir.2002) (citation omitted).

■ The defendant expressly consented to the search of his car for drugs without expressly limiting the search to the passenger area. When Sergeant Schneider began searching the trunk, the defendant did not make any effort to object. The defendant was in a position to observe the search and express an objection if the search exceeded the scope of his consent. Because the defendant gave a general authorization to search, his subsequent failure to object when the search exceeded what he now claims was a more limited consent "is an indication the search was within the scope of consent." *United States v. Wald*, 216 F.3d 1222, 1228 (10th Cir.2000) (citation omitted). The court finds that the search of the defendant's trunk did not exceed the bounds of the defendant's consent as given.

### Use of Drug Detection Dog

■ Until the Supreme Court rules otherwise, the law controlling in this circuit is that reasonable suspicion is sufficient to detain a person for purpose of performing a canine drug search, *United States v. Williams*, 271 F.3d 1262, 1271 (10th Cir.2001), *cert. denied*, 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002), and that a canine sniff is generally not a search within the meaning of the Fourth Amendment, *United States v. Brown*, 24 F.3d 1223, 1225 (10th Cir.1994); *United States v. Cervine*, 169 F.Supp.2d 1204, 1216 n. 1 (D.Kan.2001), *aff'd*, 347 F.3d 865 (10th Cir. 2003). The court also notes that unlike *People v. Caballes*, 207 Ill.2d 504, 280 Ill. Dec. 277, 802 N.E.2d 202 (2003) the canine drug search was performed after the defendant was arrested on probable cause of illegal drug trafficking activity based on the hidden compartment in the floor of the trunk and other circumstances.

As the Tenth Circuit has said, "[i]t is well established that evidence of a hidden compartment can contribute to probable cause to search." *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir.2002)

(probable cause where evidence of hidden compartment and defendant's inability to explain employment, unusual travel plans, and efforts to keep the vehicle inaccessible to the officer); *see, e.g., United States v. Anderson,* 114 F.3d at 1066 (probable cause when evidence of a tampered gas tank combined with "slightly conflicting" versions of travel plans and scent of air freshener); *United States v. Williams,* 7 Fed.Appx. 876, 886, 2001 WL 359490, *8 (10th Cir. Apr.11, 2001), *cert. denied,* 534 U.S. 1071, 122 S.Ct. 677, 151 L.Ed.2d 589 (2001) (probable cause found where evidence of hidden compartment and conflicting travel stories and insufficient proof of right to operate the car); *United States v. Smith,* 166 F.3d 1223, 1999 WL 34826, *2 (10th Cir. Jan.28, 1999) (Table) (lack of driver's license or proof of insurance, evasive answers to police questions, and discovery of hidden compartment constitute probable cause); *United States v. Chavez–Ceja,* 161 F.3d 18, 1998 WL 654986, *3 (10th Cir. Sept.21, 1998) (Table) (extended search justified by probable cause based on evidence of a hidden compartment and the strong smell of air freshener and extremely nervous behavior).

The Tenth Circuit recently identified factors relevant in evaluating evidence of a hidden compartment:

> Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence-that is, the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband. In this case, the second factor is not a concern. If the vehicle had a hidden compartment, it was highly likely to contain contraband. Jirak testified that he had found evidence of drug activity whenever a hidden compartment had been discovered. This testimony is not challenged on appeal and apparently was credited by the district court. Moreover, this expert experience conforms with common sense; it is hard to conceive of a legitimate use for a large hidden storage compartment in any vehicle, let alone one with the cargo space of a Ford Expedition. We also note that it appeared that the vehicle had recently crossed into this country from Mexico, a common origin of illicit drugs.

*United States v. Jurado–Vallejo,* 380 F.3d 1235, 1238–39 (10th Cir.2004).

 Based on the strong evidence of an inaccessible and hidden compartment in the floor of the trunk without any explanation offered for its lawful existence, the defendant's extreme and unabated nervousness, and the defendant's stated travel plans, Sergeant Schneider had sufficient cause for employing his drug detection dog. The eventual search and seizure of cocaine from the defendant's car was sustained by probable cause. The defendant's motion to suppress is denied in its entirety.

IT IS THEREFORE ORDERED the defendant's motion to suppress (Dk.19) is denied.